## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| | * | |
| | * | **CASE NO. 09-02335 ESL** |
| **FLEXIBLE PACKAGING COMPANY, INC.** | * | |
| | * | **CHAPTER 11** |
| | * | |
| **DEBTOR** | * | **(CONSOLIDATED)** |
| | * | |

*********************************************

# DISCLOSURE STATEMENT
### MAY 4, 2010

TO THE HONORABLE COURT
TO CREDITORS
TO OTHER PARTIES IN INTEREST

      The consolidated debtor herein, as debtor in possession, through the undersigned attorney, submits its disclosure statement as of MAY 4, 2010, together with the proposed plan of reorganization.

      Respectfully submitted, in San Juan, P.R. this 5 th day of May of 2010.

*/S/Wigberto Lugo Mender*
**WIGBERTO LUGO MENDER**
**ATTORNEY FOR DEBTOR**
USDCPR 212304
Centro Internacional de Mercadeo
Road 165 Torre 1 Suite 501.
Guaynabo, PR 00968
Tel. 787.707.0404
Fax 787.708.0412
wlugo@lugomender.com

## TABLE OF CONTENTS

1. **INTRODUCTION AND BANKRUPTCY PROVISIONS**

    1.1    BANKRUPTCY CODE PROVISIONS FOR POST PETITION DISCLOSURE

    1.2    DISCLAIMER

    1.3    VOTING REQUIREMENTS

2. **DEBTOR'S HISTORY, OPERATIONS AND STRUCTURE**

    2.1    THE DEBTORS AND ITS OPERATIONS

    2.2    DEBTORS' OFFICERS AND MANAGEMENT TEAM

    2.3    EVENTS LEADING TO COMMENCEMENT OF THE CHAPTER 11 CASE

    2.4    DATE THE PETITION WAS FILED

    2.5    BANKRUPTCY PROCEEDINGS

3. **DEBTOR'S FINANCIAL INFORMATION**

    3.1    GENERAL FINANCIAL INFORMATION

    3.2    ASSETS AND LIAABILITIES AS OF PETITION DATE

    3.3    PENDING LITIGATION

    3.4    LIQUIDATION ANALYSIS

4. **SUMMARY OF THE PLAN OF REORGANIZATION**

    4.1    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

        4.2     TREATMENT FOR CLASSES OF CLAIMS AND INTEREST

        4.3     PAYMENT OF UNSECURED PRIORITY GOVERNMENT CLAIMS

                UNDER 11 U.S.C. SECTION 507(a)(8)

        4.4     IMPAIRMENT OF EXISTING CLAIMS AND INTERESTS

        4.5     DISCHARGE OF CLAIMS

        4.6     OBJECTIONS TO CLAIMS

**5.**     **OTHER MISCELLANEOUS PROVISIONS**

        5.1     EXECUTORY CONTRACTS

        5.2     MEANS OF EXECUTION OF THE PLAN And FUTURE

                MANAGEMENT OF DEBTOR

        5.3     PROVISIONS FOR THE MODIFICATION OF THE PLAN

        5.4     CLOSING OF THE CASE

        5.5     RETENTION OF JURISDICTION

## 1. INTRODUCTION AND BANKRUPTCY PROVISIONS

### 1.1 BANKRUPTCY CODE PROVISIONS FOR POST PETITION DISCLOSURE:

Section 1125 of the Bankruptcy Code requires that the debtor make post petition disclosure in the form of a disclosure statement which provides "adequate information" to its creditors before debtor or a party acting on its behalf may solicit acceptances of a Chapter 11 plan of reorganization. Creditors are urged to consult with their own attorney, or with each other, and to review all of the pleadings and other documents on file with the U.S. Bankruptcy Court in order to fully understand the disclosures made herein, regarding Debtor's proposed Plan of Reorganization (hereafter referred to as the Plan) and any other pertinent matters in this case. A copy of the Plan is attached to this Disclosure Statement.

### 1.2 DISCLAIMER:

Creditors are advised that the financial information contained in this Disclosure Statement has not been the object of an audit and is not certified by independent public accountants, except where expressly stated otherwise. Debtor does not warrant or represent that the information contained herein is without inaccuracy notwithstanding the efforts to disclose all matters with careful attention to accuracy and completeness.

### 1.3 VOTING REQUIREMENTS:

In order for the Plan to be confirmed by the Bankruptcy Court, the Bankruptcy Code requires that the Plan be approved by all classes of creditors and interest holders or that the Court find that the Plan is "fair and equitable" as to any dissenting class. As provided by 11 U.S.C.

4

1124, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such a class, the plan:

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default.

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Ordinarily, but not in all circumstances, a plan may not be confirmed unless at least one impaired class, assuming there is at least one impaired class, accepts the plan. A class has accepted the plan if such a plan has been accepted by creditors, other than those under 11 U.S.C.

1126 (e), that hold at least two-thirds (2/3) in amount and more than one-half (½) in number of the allowed claims of such class held by creditors, that have accepted or rejected such plan. Creditors may vote for the acceptance or rejection of the plan.

Each creditor is urged to consult with its own attorney and obtain advice on the proposals and dispositions of this Disclosure Statement and Plan of Reorganization. The statements contained herein are only a brief summary of the confirmation process and should not be relied upon in making your determination as to whether to vote in favor of or against the Plan. Creditors should consult their attorneys before making a determination to vote for or against the Plan.

Creditors are expressly referred to the debtor's schedules of assets and liabilities and the statement of financial affairs and all other documents duly filed with the Bankruptcy Court. This Plan is predicated upon certain assumptions that may not materialize, and you are urged to give consideration to such assumptions.

No representation concerning Debtor, or as to the actual or realizable value of its property is authorized by the debtor other than as set forth in this Disclosure Statement. Any amendments or clarifications to this Disclosure Statement or the Plan shall be in writing and filed with the Court.

## 2. DEBTOR'S HISTORY, OPERATIONS AND STRUCTURE

### 2.1 THE DEBTOR AND ITS OPERATIONS:

The corporation, Flexible Packaging Company Inc., (hereinafter referred as "Flexible" or "the

6

Debtor") is a corporation organized under the laws of the Commonwealth of Puerto Rico on February 1974. The debtor manufactures paper packaging materials such as corrugated paper board, boxes, protective packaging products, corner boards, paper tubes, and has manufacturing operations in the municipality of Las Piedras and Rincón and warehouses in the Dominican Republic and Costa Rica. In the years ending September 30, 2007 and 2008, the debtor reported approximately $19,247,695 and $16,340,476 in revenues each year respectively. This company serves the pharmaceutical, medical device, electronic and food industries having approximately 150 customers and 130 employees.

Flepak Investment (hereinafter referred as " Investment") is a domestic corporation organized and intended to be engaged as a real estate company. This entity own one site covering an area of 100,000 sq. feet of industrial building and 32,000 sq. mts., in the municipality of Rincón, Puerto Rico. This buildings are used by it's sister company "Flexible" for manufacturing purposes. This company has no employees.

Flepak Shared Services Division Inc (hereinafter referred as "Services") is a domestic corporation organized under the laws of the Commonwealth of Puerto Rico on December 18, 1990 for the purposes of providing managerial services to the manufacturing related entities. Within the managerial services to the group are accounting, finance, MIS, marketing and sales for all entities. At this time, these managerial functions are conducted from the facility located at Bayamon, Puerto Rico with approximately 30 employees. This company funded its operations with inter company charges of 7% of the sales of each manufacturing branch.

7

On March 30, 2009, debtors filed a motion requesting the administrative consolidation of the all cases and this Honorable Court granted by order issued on April 1, 2009. Furthermore, on April 20, 2009, the debtors named herein filed a motion requesting the substantive consolidation of the three estates, leaving Flexible as the primary case. This motion was granted by order issued on April 20, 2009, if no opposition is filed. Notwithstanding, on May 5, 2009, the creditor Westerbank Puerto Rico, filed a motion requesting extension of time of 12 days to file response to motion requesting substantive consolidation. On June 11, 2009, this Honorable Court granted the substantive consolidation (Docket # 74).

Upon consolidation order entered on June 11, 2009, the three named entities have merged in a single operating unit named Flexible Packaging Company, hereinafter referred to as the "Consolidated Debtor".

There is another separate operating business unit within the group of companies know as the Flexible Packaging Group. Packaging Solutions, Inc., (hereinafter referred as "Packaging") is a corporation organized under the laws of the Commonwealth of Puerto Rico in the year 1996. Packaging also filed for relief under the Chapter 11 provisions and has filed a separate disclosure statement and reorganization plan. "Packaging" manufactures a wide variety of industrial plastic packaging material and other plastic products. Among them, industrial thermoform, parts, blisters, trays, clamshells, expanded polystyrene foam, molded parts, insulated concrete for roofs and walls, sandwich panels for roof and walls, foam cups, ice chests, multi laminated pouches for oxygen and humidity barriers, static prevention products, static dissipative and static shielding

8

flexible materials.

## 2.2 DEBTORS' OFFICERS AND MANAGEMENT TEAM:

The consolidated debtor, together with "Packaging", is a closely held venture of the Casellas Badillo family. As closely held businesses, the company's Board of Directors is composed of the Chairman and President, Mr. Carlos A. Casellas, Sr. and his son Mr. Charlie Casellas who is appointed as the Vice-Chairman. Mrs. Olga Badillo de Casellas has been appointed as Secretary and Ms. Olga Casellas Badillo as the Treasurer.

It is anticipated that the current directors will remain as directors during the reorganization process. The increased development and operating success of this entity derives from experience and the years of hard work in this industry.

Mr. Carlos A. Casellas – Holds a Bachelor Degree in Business Administration from the Babson College in Massachusetts, class of 1967.

Mrs. Olga Badillo - Holds a Bachelor Degree in Art, Master Degree in Architecture, and Doctor Degree in History from the University of Puerto Rico;

Mr. Charlie Casellas - Holds a Bachelor Degree in Packaging Engineering from Rochester Institute of Technology and years of experience in the packaging and manufacturing field.

Day to day management of the company is headed by Engineer Charlie Casellas, and by Engineer Cristina Sotomayor, Vice-President Plastics Division, Mrs. Madeline Colon, Vice-President Paper Division and Mrs. Elizabeth Vazquez, Vice-President Finance.

## 2.3 EVENTS LEADING TO COMMENCEMENT OF THE CHAPTER 11 CASE:

During the past six years and in an effort to improve the quality of services and products offered to highly demanding customers, management committed to substantial expansions and facilities improvements on both manufacturing units, Real property and machinery was acquired to offer new products to the highly demanding customers in order to maintain market share. These efforts required substantial financing and cash flow.

By the year 2007, the Flexible Packaging Group had a high leveraged combined structure of swap loans due to the principal creditor approximating at the time of filing $27,500,000. During the year 2008, operating costs increased, mainly related to dramatic increases in energy, petroleum, and related raw material, reducing substantially the entities revenues and their capabilities to assume this debt service.

Even after substantial reductions during the year 2008 in operating costs including employees, the economic contraction in the manufacturing segment in Puerto Rico and high yield swap interest charged by the financing bank precluded the recovery of adequate cash flows to repay the outstanding secured debt of the group.

Upon an impasse with the principal creditor, the companies had no other alternative than to file the instant reorganization proceeding to assure the continuation of its business.

## 2.4 DATE THE PETITION WAS FILED

The bankruptcy petition was filed on March 28, 2009, under the provisions of Chapter 11 of the Bankruptcy Code. Upon filing the debtor remains operating as a Debtor in Possession.

## 2.5 BANKRUPTCY PROCEEDINGS

### Consolidation of the Paper Division Entities:

On April 20, 2009, Flexible Packaging Company, Inc., Flepak Investment, Inc., and

Flepak Shared Services Division, Inc. filed a motion seeking the substantive consolidation of

these three proceedings. These three companies have been consolidated to manage the paper

division of the group.

### Stipulation with Westernbank – Cash Collateral Use on the Group

Shortly after the filing of the bankruptcy petition, debtor and the major creditor of the

group, Westernbank entered in negotiations and on May 22, 2009. As stated in said motion, the

consolidated company jointly with the debtor herein filed a Joint Stipulation on the use of cash

Collateral and Adequate protection. On June 11, 2009 the Court granted this Stipulation.

To ensure that it would have sufficient liquidity to conduct its business during the

Chapter 11 Case, the consolidated debtors determined in their business judgment that is was in

the best interest of the Debtors and their creditors to obtain a commitment for debtor in

possession financing. The DIP Facility provided for the ongoing use of cash received by the

Flexible Packaging Company Inc. costumers in the operations of the business, which cash

constituted the Pre-Petition Lender's cash collateral. Such cash collateral agreement was intended

to ensure the orderly continuation of the operation of the Flexible Packaging Company Inc.

business during the Chapter 11 case, to maintain business relationship with vendors, suppliers

and customers, to make payroll, to make capital expenditures, and to satisfy other working

11

capital and operational needs.

Although the debtor company does not directly guarantee with its assets the debt of the bank, the premises were the business operate do. As part of this stipulation for use of cash collateral and pursuant to Sections 361 and 363 of the Bankruptcy Code, as adequate protection for Westernbank, Mr Carlos Casellas and Mrs. Olga Rosaura Badillo, executed a Lease Agreement by and between Casellas, and Debtor Packaging Solutions, Inc. as tenant for the real property located in Bayamón, Puerto Rico where from Packaging Solutions, Inc. currently operates its manufacturing business. The monthly rent payments shall not be less than $32,500.00. These monthly rent payments have been assigned and are to be applied against the amounts outstanding under the Loans.

Moreover, on additional considerations of the value of the property serving as collateral for the outstanding obligations with the bank and in order to balance and correct the use of funds provided by the financing, Packaging will assume a debt service portion of all obligations with the bank in the amount of $11,900,000.

On December 31, 2009, a Joint Stipulation to Extend Agreement for the Use of Cash Collateral was filed. By virtue of this agreement, the consolidated debtor, Packaging and the bank have agreed in the terms that would provide continuation of all entities under similar payment provisions, pending the confirmation of the reorganization plans. Upon this extension, said agreement is valid until May 31, 2010.

*Compliance with Operating Guidelines and DIP Requirements*:

Upon the filing of this bankruptcy petition, Flexible has taken all possible measures necessary to reorganize the enterprise. Debtor is in compliance with the Operating Guidelines as follows:

a)      Monthly Operating Reports have been completed and filed with the Court up to March 2010.

b)      Property and public liability insurance has been maintained

c)      Quarterly fees required by the U.S. Trustee are up to date.

d)      Post petition expenses are paid in the ordinary course of business.

e)      Tax returns and declarations have been filed as these become due.

*Employment of Professionals*:

On March 31, 2009, debtor filed its application to employ attorney Wigberto Lugo Mender and the firm of Lugo Mender & Co., who will serve as attorney for the debtor in possession. On April 1, 2009, the Court entered an Order approving this employment.

On October 9, 2009, debtor filed the application for employment of external auditor José Galindez CPA, PSC of FVP Galindez CPA, PSC, for concluded the financial statement for the year ended September 30, 2008. This accounting firm has also been selected to complete the audited financial statements for the year ended September 30, 2009. On April 28, 2010, debtor filed the application for employment of external auditor José Galindez CPA, PSC of FVP Galindez CPA, PSC, for concluded the financial statement for the year ended September 30,

2009. This work is currently in process.

On October 9, 2009, debtors filed the application for employment of appraiser Ivan Vazquez, Eng. for preparing and rendering an appraisal report of equipment located in consolidated debtors' premises in Las Piedras & Rincón.

*Operational Adjustments Implemented*:

Operational reports are being analyzed in order to identify business alternatives and marketing strengths that could maximize debtor's returns in its operations.

Within the operational measures implemented to reorganize the business are the following:

a)      Debtor has drastically reduced, by more than 20 %, the number of employees working in the company. In addition, the overall management of the company has become more effective with the participation of new officers.

b)      Debtor has reduced company's overhead expenses, such as telephone, freight and delivery expenses. Compensation and benefits to management have also been reduced.

c)      Lower inventory levels are expected to be maintained and management plans to, with the assistance of the private lender, to restructure its internal control over inventory, sales and daily operations of the business. Management has implemented an inventory on consignment program by which investments in raw materials have been significantly reduced.

d)      Even after these cost adjustments, sales levels and manufacturing levels have been

reduced in approximately 25%. Raw material cost has been reduced 18% and

Manufacturing costs in 20%.

Since the date of filing, Debtor has concentrated all efforts in identifying and developing

means to fund a Reorganization Plan so as to provide for payments of obligations to all creditors.

Management has considered multiple means for implementing its reorganization process.

Within the alternatives considered are the sale of real properties and or relocation of operating

facilities to reduce the leveraged operations. Given the current real property market conditions, it

is estimated that this sale process will take no more than 24 months. In all scenarios, the best

alternative to comply with the creditors in this case is to continue the business as a going concern

enterprise and thus generate the necessary resources for the payment of a reorganization plan.

*Appointment of Creditor's Committee*

Pursuant to section 1102 (a) of the Bankruptcy Code, on June 17, 2009, the US Trustee

appointed certain entities to Creditors' Committee. The original members of the Creditors'

Committee were: *(a) Smurfit-Stone Puerto Rico Inc. (b) Tech Aerofan Prod. and (c) Canusa*

*Corporation.* (Docket # 80)

On October 9, 2009, the application for approval of Employment of Counsel for the

Creditors Committee, namely, the law offices of L.A. Morales & Associates P.S.C. in that

Lysette Morales Vidal, Esq. as its counsel was filed and approved by the Bankruptcy Court.

## 3. DEBTOR'S FINANCIAL INFORMATION

*3.1 GENERAL FINANCIAL INFORMATION:*

Debtor includes as **Exhibit 1** to the Disclosure Statement copies of the last available audited financial statements prepared by Galindez CPA Group Inc., as of and for the years ended September 30, 2007 and 2008.

The audited financial statements for the year ended September 2009 will be presented by means of a supplement to this disclosure statement once these financial reports are completed.

For purposes of filing this petition, debtor has analyzed and presented the required schedules. The information provided in the schedules filed and the statements of financial affairs show debtor's situation as of the date of the filing of the petition. Said financial situation has changed on account of the reorganization steps currently undertaken.

Monthly operating reports available in the Bankruptcy Court file show that debtors' finances have remained constant and that the possibility of a reorganization of its finances is viable. A summary of all monthly operating reports has been prepared and enclosed herein as **Exhibit 2**.

*3.2    ASSETS AND LIABILITIES AS OF PETITION DATE:*

*Schedules and Statement of Financial Affairs*

The debtors filed its Schedule of Assets and Liabilities and Statement of Financial Affairs (collectively, the "Schedules and Statements") with the Bankruptcy Court on April 3, 2009 (Docket # 15). Among other things, the Schedules and Statements set forth the Claims of known creditors against the Debtors as of the Petition Date, based upon the Debtors' books and records.

Moreover, a detail of all assets is provided in the liquidation analysis section, with

updated values as detailed herein as **Exhibit 3**.

### *Claims Bar date and Proof of Claims*

On March 30, 2009, The Bankruptcy Court entered an order setting bar date for general unsecured claims on July 30, 2009 and for governmental units (as defined by section 101 (27) of the Bankruptcy Code) as September 28, 2009 (the "Bar Dates"). To date, the Debtor has received 91 proof of claims forms asserting approximately $32.9 millions in claims. The Debtor has begun the process of reviewing the asserted Claims and has identified objections to those Claims it believes should be disallowed in whole or in a part.

The Debtors' estimates of Allowed Claims are identified herein. See Schedule of Payments under the Plan of Reorganization enclosed as **Exhibit 4.**

### *3.3 PENDING LITIGATION:*

*Dionet Bonet Talavera vs.Flexible Packaging Inc.* - Case No. ABCI2009-00061, at the Puerto Rico First Instance Court – Aguada Part – This proceeding concerns a wage claim filed around the date of the filing of the instant bankruptcy petition. This litigation has been stayed upon the filing of this case. At this moment this case remains inactive and management foresees no award of claims against the estate that would alter the composition of this plan. Any amount due to this claimant, subject to the filing of will be considered as an unsecured claim.

### *3.4 LIQUIDATION ANALYSIS:*

One requirement for the confirmation of a plan under Chapter 11 of the U.S. Code is that, with respect to each impaired class of claims, each claim holder of such class has accepted the plan or will receive or retain under the plan on account of such allowed claim, a value as of the effective date of the plan, that is not less than the amount such claim holders would receive or retain if the debtor was to be liquidated under Chapter 7 of the Code on such date. In order to provide the value as of the effective date of the plan under a Chapter 7 scenario, debtor provides a detailed liquidation analysis.

For purposes of determining a liquidation value, debtor has estimated as realizable in a chapter 7 scenario from 50% to 100 % of the actual or scheduled value for existing personal property. The estimated realizable values have been deducted for purposes of the liquidation analysis using the experience of liquidation of assets under Chapter 7 bankruptcy cases. Liens and encumbrances have been reduced as well.

For the estimated realizable value, estimated administrative expenses have been reduced to determine the estimated amount for unsecured creditors in a liquidation. A detailed liquidation analysis is enclosed herein as **Exhibit 3**.

The liquidation analysis prepared for this case shows that, upon realization of estate assets and payment of liens and expenses, unsecured creditors would receive no meaningful dividend under a Chapter 7 proceeding in as much as most estate property is encumbered to a secured creditor and all realizable funds would be distributed to priority claimants.

## 4.    SUMMARY OF THE PLAN OF REORGANIZATION

*4.1   DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS*

The Plan divides the creditors into FIVE (5) classes. The classes of creditors are as follows:

**CLASS 1** – ADMINISTRATIVE EXPENSES

**Class 1 – General Administrative Expenses**:  Shall consist of Allowed Administrative Expense Claims, as provided under sections 507 (a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code including, without limitation, costs and expenses allowed under section 503 (b) of the Bankruptcy Code, the actual and necessary costs and expenses of preserving the Debtors' Estate and Professional Fee Claims and any fees or charges assessed against the Debtors' Estate under 28 U.S.C.§ 1930. This class including, but not limited to, the United States Trustee's quarterly fees; fees and expenses of Debtors' counsel, external auditor and other professionals as may be allowed by the Bankruptcy Court upon application therefore and after notice and hearing according to the Bankruptcy Code and Rules and; any unpaid taxes or fees accrued since petition date as well as court costs accrued since the petition date.

Debtor estimates the liability in this Class 1 in the amount of $287,750.

**CLASS 2 -**    EMPLOYEE WAGES AND VACATIONS

This class shall consist of all allowed administrative priority claims pursuant to Section 507(a)(4), as well as wages and other employee benefits, up to a maximum of $10,950 for each individual, earned within 180 days before the date of the filing of the petition. Employee wages accrued or owed within 180 days prior to filing Debtor's petition were scheduled and claimed in

the amount of $103,171.

## CLASS 3 – SECURED CREDITOR

### *Class 3.1 SECURED CREDITORS - SAME TERMS*

Popular Auto filed the proof of claim number 10 in the total amount of $17,628. The

property serving as collateral for this claim is one (1) Jeep Liberty Year 2006 used for operations.

Al Credit filed proof of claim number 17 in the total amount of $18,215.

Debtors scheduled the amount of $85,000 in favor of Banco Popular. This amount is in

consideration of one promissory note secured by Debtors' real property and land of 600mts

located at Las Piedras, Puerto Rico.

Toyota Credit was scheduled by debtor as having an unliquidated secured claim in the

amount of $18,094. This account is secured with a conditional sales agreement encumbering a

206 Lexus IS350 a vehicle currently used in the business operations .

### *Class 3.2 SECURED CREDITOR: "Accrecent Financial"*

Acrecent Financial filed the proof of claim number 81 in the amount of $160,392. This

amount is in consideration of commercial loan and promissory note secured by certain

manufacturing equipment used in Packaging Solutions Inc.  This proof of claim will be objected

inasmuch is not due by this bankruptcy estate.

### *Class 3.3 SECURED CREDITOR: "BBVA"*

BBVA filed the proof of claim number 3 in the total amount of $525,698. This amount is

in consideration of certain mortgage loans secured by Debtors' real properties located at Luna

Street (Apartments # 260, 262 & 264) in Old San Juan, PR.

### *Class 3.4 SECURED CREDITOR: "Oriental Bank"*

Oriental Bank filed the proof of claim number 62 in the total amount of $200,881. This amount is in consideration of a commercial loan secured by Debtors' manufacturing equipment located at Las Piedras Plant.

### *Class 3.5 SECURED CREDITOR: "Westernbank"*

Westernbank filed proofs of claim number 69, 70, 71 & 72 in the total aggregate amount of $28,075,215. These amounts are in consideration of commercial loans and promissory notes secured by Debtors properties described and located at Montones Ward in Las Piedras, PR (Commerial Property of 10.1755 "cuerdas"); and three Industrial Building Land of 2.8477 cdas, 3.6851 cdas and 1.78639 cdas, respectively, and located in Rincón PR. This creditor also holds security agreements encumbering debtor's accounts receivable and inventory.

These loans are also guaranteed by Packaging Solutions, Inc., and jointly by Mr. and Mrs. Casellas Badillo.

. **CLASS 4 –** GENERAL UNSECURED CREDITORS

### *Class 4.1 GENERAL UNSECURED CREDITORS (EMPLOYEES)*

General unsecured creditors considering the employees of Debtors those listed by the Debtors, those who filed a proof of claim and those secured creditors, who after Debtors' efforts have agreed to be considered part of their claim as unsecured, are included in this class.

The debt under this class is estimated in no more than $18,782.

### *Class 4.2 GENERAL UNSECURED CREDITORS – TRADE UNDER $2,000.*

This class is composed of general unsecured creditors with amounts due under $2,000 considering those listed by debtor, those who filed a proof of claim and those unsecured creditors with amounts in excess of said amount but that have requested to be considered within this dollar limit are included in this class.

The debt under this class has been estimated by debtor in the amount of $53,806.

### *Class 4.3 GENERAL UNSECURED CREDITORS Over $2,001*

This class is composed of general unsecured creditors with amounts due over $2,000, considering those listed by debtor, those who filed a proof of claim and those secured creditors, who after debtor's estimates or as ordered by the Court its claims have been determined to be deem as unsecured. The debt under this class has been estimated by debtor in the amount of no more than $5,086,000.

### CLASS 5 – EQUITY SECURITY INTEREST HOLDERS

Equity security and interest holders are the current owners of the common stocks of the Debtor. The current stockholders of the corporation are Mr. and Mrs. Carlos Casellas, who own 100% of the voting common stock. Currently, these stockholders are the principal officers and directors of the corporation and have been actively engaged in Debtors' reorganization process.

*4.2 TREATMENT FOR CLASSES OF CLAIMS AND INTEREST:*

**CLASS 1** – ADMINISTRATIVE EXPENSES

Allowed Administrative Expense Claims, as provided under Section 503 of the Code,

shall be paid in cash and in full as soon as practicable or agreed with the creditor on the later of

(a) the Effective Date or (b) the date any such claim becomes an allowed Administrative Claim.

This class is not impaired.

**CLASS 2** – EMPLOYEE WAGES AND VACATIONS

All allowed amounts owed under this class will be paid in the ordinary course of business

of the debtor. Members of this class which are no longer employed by the debtor will receive

payment on account of their claim on the effective date of the plan.

This class is not impaired

**CLASS 3** – SECURED CREDITOR

### *Class 3.1 SECURED CLAIM WITH SAME TERMS*

This class shall retain unaltered its legal equitable and contractual rights. Debtors are in

full compliance with the original terms with the creditor in this class and will continue to make

regular payments as agreed to. Debtors will continue to pay this creditor under the terms and

conditions of its obligation therewith.

This class is not impaired.

### *Class 3.2 SECURED CREDITOR: "Acrecent Financial"*

23

Although this class shall retain unaltered its legal equitable and contractual rights, none are due by this bankruptcy estate. The equipment serving as collateral for this claim pertains and is used by Packaging Solutions, Inc., and not by this bankruptcy estate who by virtue of this plan will not pay any amounts due to this creditor.

Although this creditor may be deemed impaired, it will not vote for the plan inasmuch no payment is provided in this plan.

### Class 3.3 SECURED CREDITOR: "BBVA"

This class will be paid in full with the proceeds of the sale of the Apartments located in Luna Street in Old San Juan. Debtors has commenced marketing efforts to try to sell these properties and deems necessary a time period of 24 months to complete these sales. At the time of closing and after discounting selling, notarial expenses and real property taxes, net proceeds up to the amount of $525,000, will be paid to BBVA of Puerto Rico on account of its secured claims encumbering these properties.

During the time period while these properties are sold which should not exceed 24 months from confirmation date, debtors will pay to BBVA accrued interest at the rate of no more than 6% over the principal due to this creditor.

This class is impaired.

### Class 3.4 SECURED CREDITOR: "Oriental Bank"

This creditor's legal and equitable interest on this secured amount will be modified upon the confirmation of this plan. Considering the value of the property serving as collateral for this

claim, the secured amount under this class as of the date of filing of the instant petition shall be

fixed in the amount claimed as per the proof of claims filed. This amount will be paid as

follows.

On the effective date of the plan, the outstanding secured debt due this creditor will be

restructured into an installment payment plan calling for consecutive monthly payments to pay

the secured amount determined herein in cash and in full. The secured balance as determined

will be paid in full, with interest computed at 3.25 %, payable in monthly installments of no more

than $1,963.00 each until full payment of the outstanding amount.

These payments will start on the Effective Date, on the basis of consecutive monthly

installments providing for the payment of the face amount, with interest computed at a fixed

3.25%, during a period of 5 years but on amortization computed over 10 years, as per the

Schedule Payments under the Plan of Reorganization enclosed herein as **Exhibit 4**.

Regarding the security agreements over personal property, this creditor will retain

unaltered the legal and contractual rights over the property serving as collateral until full payment

of the secured amount as detailed in the plan.

This class is impaired.

### *Class 3.5 SECURED CREDITOR: "Westernbank"*

As further detailed in the Stipulation to Extend Agreement for the Use of Cash Collateral,

filed on December 31, 2009, the consolidated debtor, Packaging Solutions, Inc., and the

guarantors have negotiated a restructured repayment agreement to pay the amounts due under this

class. As to the consolidated debtor, a stipulation for the continuation of the use of cash
collateral and for the repayment of the amounts due to this creditor will be filed with the Court
on or before May 31, 2010.

In summary, within the terms discussed and proposed to this creditor at this time are the
following:

1.      Regarding the security agreements over real and personal property, this creditor
will retain unaltered the legal and contractual rights over the property serving as collateral until
full payment of the secured amount as detailed in the plan.

2.      The aggregate outstanding balance due by the consolidated debtor and the
guarantors in the principal amount of $28,636,831 will be payable in sixty (60) consecutive
monthly installments of principal and interest.

3.      Flexible shall be primarily responsible, subject to all existing collateral and
guarantees, to pay the sum of $16,726,415 in sixty consecutive monthly installments, for the first
fifty nine monthly installments of principal and interest and one last final payment due on
November 14, 2014. Interest will be computed on rates that will range between 3.75% and
6.75%. Estimated monthly payments during this 60 month period will be between $72,111 and
$103,688.

This creditor will receive payment pursuant the terms of the credit facility to be entered
and agreed to jointly with Flexible Packaging Company, Inc., Flepak Investment, Inc., and
Flepak Shared Services Division, Inc., the three substantively consolidated under order entered

by the Court. On the consummation date and pursuant the terms of the credit facility, this

creditor will be paid on the terms provided in this separate agreement.

The agreement to be entered between the parties will render this class as unimpaired.

## CLASS 4 – GENERAL UNSECURED CREDITORS

### *Class 4.1 GENERAL UNSECURED CREDITORS (EMPLOYEES)*

All allowed amounts owed under this class will be paid in the ordinary course of business

of the debtor. Members of this class which are no longer employed by the debtor will receive

payment on account of their claim on the effective date of the plan.

This class is not impaired

### *Class 4.2 GENERAL UNSECURED CREDITORS – TRADE UNDER $2,000.*

On the Consummation date, each Class 4.2 allowed claimant shall receive from the

debtor a lump sum payment providing for a 20% dividend of their allowed amounts. Each Class

4.2 creditor shall be paid in a single payment on amounts due as detailed on the Schedule

Payments under the Plan of Reorganization enclosed herein as **Exhibit 4**.

Dividend payments shall be executed and delivered by the Reorganized Debtor within 20

days from the consummation date or with respect to any Class 4.2 claim, which is objected,

within 20 days following a final and unappeasable order on the objection.

This class is impaired.

### *Class 4.3 GENERAL UNSECURED CREDITORS Over $2,001*

Each Class 4.3 claimant shall receive from the Debtor a non-negotiable, non-interest

bearing promissory note, dated as of the Effective Date, providing for a payment calculated on pro-rata distribution on the aggregate amount provided for this class. Debtor will provide an aggregate dividend of $800,000, payable in two yearly installments, the first in the amount of $400,000 due 12 months after the effective date of the plan and the second in the amount of $400,000 due 24 months after the effective date of the plan. Each Class 4.3 note shall be in two lump sum payments providing for a pro-rata dividend of their allowed amounts on the allotted dividend amounts, as per the Schedule Payments under the Plan of Reorganization enclosed herein as **Exhibit 4**.

Notes shall be executed and delivered by the Reorganized Debtor within 30 days from the consummation date or with respect to any Class 4.3 claim which is objected, within 30 days following a final and unappealable order on the objection.

This class is impaired.

**CLASS 5** – EQUITY SECURITY INTEREST HOLDERS

This class includes all related companies, equity security and interest holders which are the owners of the stock of the Debtor. Equity Security Interest Holders and Related party claimants, as detailed above will not receive any cash dividend throughout this plan. Inter company debts and receivables should be disregarded and no payment will be considered to related parties or companies under the Plan.

Class 5 holders shall retain their interest in the reorganized debtor by receiving a distribution of common stock from the reorganized company equivalent to their current

participation in the corporate Debtor. They will also assist the debtor in its reorganization with
their experience, knowledge and personal work.

The interest to be retained by the stockholders will be issued in consideration of the
stockholders' contribution to the business upon completing a capital investment to the company
in order to contribute to the payment of allowed claims under Class 4.3 as further detailed in the
plan. The amount of additional contribution is estimated in the aggregate amount of
$400,000.00. Refer also to the section of *Means for Execution of the Plan*.

Even though this class is impaired, this class will not vote for the plan.

*4.3    PAYMENT OF UNSECURED PRIORITY GOVERNMENT CLAIMS UNDER 11 U.S.C.
SECTION 507(a)(8):*

All allowed unsecured priority claims pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the
same are allowed, approved and ordered to be paid by the Court, will be paid as stated below.
Debtor estimates the debt as follows:

    a.   CRIM: $71.00 as per Proof of Claim # 24

    b.   CRIM $1,790 as per Proof of Claim #1 in Investment.

    c.   Internal Revenue Service: $6,971 as per Proof of Claim #50

    d.   Municiplity of Rincón: $23,196 as per Proof of Claim #64

    e.   Municipality of Las Piedras: $21,908 as per Proof of Claim # 88

    f.   Municipality of Bayamon: $8,848 as per Debtor's estimate

    g.   PR Department of Treasury: This creditor claimed the amount of $250,715 as

unsecured portion on the Claim #89. Notwithstanding, debtors estimated the

unsecured portion in the amount of $150.00. Debtors are completing the compilation

of supporting information to file an objection to this claim.

All allowed unsecured priority claims, pursuant to 11 U.S.C. § 507(a)(8) of the Code, as

the same are allowed, approved and ordered to be paid by the Court, shall be paid through monthly

installments commencing on the effective date and during a period not exceeding five years after the

date of the assessment of each such claim. Each claim is to be evidenced by a promissory note for

the full amount thereof, bearing interest at the statutory rate, dated as of the Effective Date, the value

of the future payments to be equal to its allowed amount.

In relation with the claim of IRS, if Debtors fail to make any deposits of any currently

employment tax liability, fails to make any payment of any tax to IRS within 10 days of the due date

of such deposits or payment, if Debtors fails to file required federal tax return by the due date, or if

the Debtors fails to make any payments due to the IRS under this plan, the IRS may declare that the

Debtors is in default, provided that a notice is given in writing to the Debtor to the address of record.

If the IRS declares the Debtors in default, the Debtors must cure that default within 30 days. If the

total amount in default is not cure, then the entire imposed liability to be paid under the plan,

together with any unpaid current liability, shall become due and payable immediately upon written

demand.

The IRS, notwithstanding any stay which may be in effect, may then collect any unpaid

liabilities through the administrative collection provision of the IRS.

30

See Schedule Payments under the Plan of Reorganization, **Exhibit 4.**

*4.4    IMPAIRMENT OF EXISTING CLAIMS AND INTERESTS:*

As provided by 11 U.S.C. 1124, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such a class, the plan:

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default.

> a.  cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;
>
> b.   reinstates the maturity of such claim or interest as such maturity existed before such default;
>
> c.  compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
>
> d.  does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

*4.5    DISCHARGE OF CLAIMS:*

Except as otherwise provided for in this Plan or in the Order of Confirmation, the rights

granted by the Plan and the payments and distributions to be made there under shall be in

complete exchange for, and in full satisfaction, discharge and release of, all existing debts and

claims of any kind, nature or description whatsoever against the Debtor. On the Consummation

Date, all existing claims shall be deemed to be exchanged, satisfied, discharged and released in

full; and all holders of claims shall be precluded from asserting any other or future claim based

upon any act or omission, transaction or other activity of any kind or nature that occurred prior to

the Consummation Date, whether or not such holder filed a proof of claim.

The order of confirmation of this Plan shall constitute an injunction against the pursuit of

any claim or Equity Interest, whether or not a proof of claim or proof of interest based on any

such debt, liability, or interest is filed or deemed filed, under 11 U.S.C. 501, such claim is

allowed under 11 U.S.C. 502 or the holder of such claim has accepted this Plan in the manner set

forth herein.

### 4.6    OBJECTIONS TO CLAIMS:

The Debtor, at its option or upon order of the Bankruptcy Court, if requested may file an

objection to any claim as to its validity or amount within 30 days before the confirmation date

and may substitute for the Debtor as the objecting party to any pending claim objections.

Objections not filed by the date of confirmation shall be deemed waived. If an objection is made,

payment to such claimants will be made only after the entry of a final order by the Court allowing

such claim and in accordance with the provisions of the Plan governing such class to which such

32

claims belongs.

The claim of any creditor whose claim has been scheduled as disputed but who has not

filed a proof of claim shall be disallowed by confirmation of the Plan.

## 5.    OTHER PROVISIONS

### 5.1    EXECUTORY CONTRACTS:

Debtor assumes all unexpired leases and executory contracts to which it is a party and

which have not been expressly rejected pursuant to 11 U.S.C. Section 365(a).

### 5.2    MEANS OF EXECUTION OF THE PLAN AND FUTURE MANAGEMENT OF

### DEBTOR:

Upon confirmation of the plan, the Debtor shall have sufficient funds to make all

payments then due under this Plan. The funds will be obtained from the continuation of the

business operations named Flexible Packaging Company, Inc. A set of business projections will

be provided once the audited financial statements are completed by means of a supplement to this

disclosure statement.

On the Consummation Date of the Plan, the operation of the named business and other

estate assets shall be and become the general responsibility of the reorganized Debtor

("Reorganized Debtor"), which shall thereafter have the responsibility for the management,

control and administration thereof.

In addition to the covenants and provisions contained in this plan, the equity security

holders have compromised a capital contribution in an amount sufficient to contribute to the

dividend allotted to Class 4.3 as further detailed in the plan.

## 5.3 PROVISIONS FOR THE MODIFICATION OF THE PLAN:

The Debtor may propose amendments or modifications of this Plan at any time prior to its

confirmation pursuant to 11 U.S.C. 1127. After confirmation of the Plan, the Reorganized

Debtor may, with the approval of the Court and as long as it does not adversely affect the

interests of the creditors, remedy any defect or omission, in such manner as may be necessary to

carry out the purposes and effects of the same.

## 5.4 CLOSING OF THE CASE:

At such time as the case has been substantially consummated, this case shall be closed.

In order for the case to be closed, Debtor shall file an application for final decree showing that

the case has been fully administered and the Plan has been substantially consummated. The

Court may conduct a hearing upon application thereof and after notice to all creditors and parties

in interests. Thereafter, an order approving the Debtor's report and closing the case shall be

entered.

## 5.5 RETENTION OF JURISDICTION:

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by

law, rule or statute, or by this Plan, to enable the Debtors to consummate any and all proceedings

which they may bring before or after the entry of the order of confirmation, in order to carry out

the provisions of this Plan.

This is the Disclosure Statement and Plan of Reorganization hereby proposed to creditors

and parties in interest, filed with the Honorable Bankruptcy Court on this same date. Parties are

encouraged to review these documents in order to formulate an informed decision on debtor's

whereabouts and conditions. A hearing to consider the approval of this Disclosure Statement

will be scheduled by the Honorable Court, with Notice of said hearing served to all parties as per

the master address list.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, this  5   day of May of 2010.

**CARLOS A. CASELLAS**
President of Flexible Packaging Company Inc.,
Flepak Investment inc & Flepak Shared Services Division Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY:** That on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the participants appearing in said record.

**I HEREBY CERTIFY**: That on this same date, a true and correct copy of the foregoing Disclosure Statement and Plan of Reorganization, has been hand delivered to the United States Trustee, and mailed by first class service to those parties that, in writing, have requested copy of said document, as ordered by the Court.

**/S/ WIGBERTO LUGO-MENDER**
**WIGBERTO LUGO-MENDER**
**ATTORNEY FOR DEBTOR**
USDC-PR 212304
CENTRO INTERNACIONAL
DE MERCADEO
Road 165 Tower I Suite 501
Guaynabo, PR 00968
Tel. (787) 707-0404
Fax  (787) 707-0412

wlugo@lugomender.com

# INDEX TO EXHIBITS

**Exhibit
Number**                    **Description**

1.      Financial Statements – Year ended September 30, 2007 and 2008 (Financial Statement for year ended September 30, 2009 – **To be Provided)**

2.      Summary of Monthly Operating

3.      Detailed Liquidation Analysis

4.      Schedule of Payments Under The Plan of Reorganization

5.      Business Projections – **To be Provided**